Antonio Fernández, Plaintiff and Appellee, *v.* Las Monjas Racing Corporation, Defendant and Appellant.

No. 7495. Argued January 25, 1938.—Decided March 10, 1938.

*Leopoldo Feliú* for appellant. *Gonzalo Ardín* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

In the horse races held on December 2, 1936, the petitioner paid for and played a *cuadro,* which won through his success in selecting the winners of the seven races run that day.

In making the examination for the purpose of determining the persons among whom the pool would have to be divided, the Insular Racing Commission had petitioner's *cuadro* under consideration, to determine whether the *cuadro* was valid or whether its defects were such as to invalidate it. The commission found that the *cuadro* was valid and ordered that the amount corresponding thereto be paid by Las Monjas Racing Corporation, which has refused to make the payment.

Averring that he had no other adequate legal remedy to compel the defendant to comply with the order of the Insular Racing Commission, petitioner prayed the District Court of San Juan to issue a writ of mandamus by which the defendant would be ordered to pay to petitioner the sum of $292.95,

the value of the *cuadro*, together with costs and attorney's fees.

After issue of the alternative writ, defendant appeared and, in opposition to petitioner's claims, set up that the facts set forth in the petition are insufficient to state a cause of action; and that the district court was without jurisdiction over the case because of its subject matter.

From an adverse decision, defendant appeals to this Court.

It is proper to state that at the trial the parties stipulated that at the same races held on December 2, 1936, there was another *cuadro* claimed by one Carlos Brignoni; that his *cuadro* was held by the commission to be null and void; that the defendant also refused to pay the amount claimed by Brignoni; that the defendant brought an action in the same District Court of San Juan for a declaratory judgment to determine whether or not it is obliged to pay either of the two alleged winners; and that the defendant consigned and deposited in court the amount which would belong to each of the claimants, pending decision in the suit for declaratory judgment.

As may be seen from the facts just set out, the case is not one in which two different persons claim from another the payment of the same sum, and the debtor deposits the amount in court so that the court may decide which of the two claimants ought to be paid. Brignoni's claim has no connection whatever with the claim made by the petitioner in this case.

Appellant's assignments are to the effect that the lower court erred (1) in having issued a peremptory writ of mandamus ordering the payment of a sum owed by reason of a contractual obligation; and (2) in having regarded appellant's obligation as a statutory ministerial duty.

Act No. 11, approved April 18, 1932 (Laws, pp. 194, 210), known as the "Racing Act," provides:

"Sec. 27.—Any natural or artificial person who, in accordance with this Act, establishes, or has duly established, a race track in

Porto Rico, and operates, or allows another person to operate, *bancas alemanas* or pools within the race-track grounds, shall be liable to bettors for any just claim; *Provided,* That the decisions of the jury and of the Insular Racing Commission shall constitute sufficient authority so that the owner of the race-track who abides by such decisions shall be relieved of further responsibility."

Complementing the foregoing provision of the statute, Section 205 of the Regulations of the Insular Racing Commission provides that the decisions of the commission shall be final and conclusive for all purposes.

The relationship between the owner of a race-track operating a pool and the purchaser or player of a *cuadro* is not, in our opinion, purely contractual in nature. In reality the contracting parties are all those persons who by the purchase of a *cuadro* and by the payment of the purchase price contribute the sums necessary to constitutê a common fund, called the "pool," to be paid to the person or persons who select the greatest number of winning horses. The operator of the pool is not in reality a party to the gaming contract. His interest is fixed and not aleatory, being limited to a certain percentage of the total sum of the bets laid by the players. His legal position is that of a mere stakeholder or trustee of the funds contributed by the players for the benefit of those who may win and have a just claim against those funds. His duties as such stakeholder or trustee are clearly established by Section 27 of the Racing Act, *supra*, and not by contract. The determination of the justice of a claim presented by the player of a *cuadro* is a function of the Insular Racing Commission and not of the operator of the pool. As soon as the commission renders a decision favorable to a claimant player, the stakeholder of the funds of the pool has the ministerial duty of paying the value of the *cuadro* to its owner, and may not take any appeal whatever from the decision of the commission, since that decision is final and conclusive for all purposes.

■ The filing of an action for a declaratory judgment to determine the rights of the parties and to decide whether or not the claim of this petitioner is just, cannot have the effect of depriving the owner of a *cuadro,* whose claim has been approved by the commission, of the right to demand that his winnings be paid to him, or relieve the operator of the pool from the duty imposed upon him by law to pay the sum which he has in his possession as stakeholder. The evident intention of the legislature has been to confer upon the Racing Commission exclusive and final jurisdiction to hear claims made by players of a pool. To permit the use of a proceeding for a declaratory judgment to review what has already been decided by the Racing Commission would amount to giving the operator of the pool a remedy by appeal, which the legislature expressly denied him in providing that the decisions of the commission should be final and conclusive. Similarly, it would be unjust to require the owner of the *cuadro* to commence an action to recover a sum which has already been awarded to him, finally and conclusively, by the commission, and which the stakeholder is by operation of law bound to pay.

■ Section 650 of the Code of Civil Procedure (1933 ed.) authorizes the issuance of a writ of mandamus to any person or corporation to compel the performance of any act which the law especially orders as a duty "resulting from an office, trust or station." When the duty to be performed is ministerial or executive and its performance does not depend upon the discretion of the one called upon to perform it, the writ of mandamus may and should be issued. See: *Ortiz* v. *Muñoz,* 19 P.R.R. 809; *Santiago* v. *Feuille, Attorney General,* 10 P.R.R. 408; and *Pagán* v. *Towner,* 35 P.R.R. 1.

We are of the opinion that as soon as the Racing Commission decided that petitioner's *cuadro* was valid and his claim warranted, the obligation to pay the amount thereof became a ministerial duty, public in nature, binding upon the defendant as stakeholder of the funds.

766

 Appellant argues that in providing in Section 27 of the Racing Act, supra, that "the decisions . . . of the Insular Racing Commission shall constitute sufficient authority so that the owner of the race-track who abides by such decisions shall be relieved of further responsibility," the legislature left it within the discretion of the holder of the funds to abide or not to abide by such decisions. We do not believe that the language of the statute is susceptible of such an interpretation. To admit this we would also have to admit that the quasi-judicial powers granted by the act to the commission, to investigate and decide as to the justice of a claim, are useless formalities and that the sole judge and arbiter as to whether the amount of a *cuadro* should or should not be paid is the stakeholder, notwithstanding his acceptance of the deposit subject to the obligation to pay the same to the person who in the judgment of the commission might present a just claim. The intent of the legislature was, in our opinion, simply that of relieving and protecting the depositary once he has complied with the order of payment made by the commission.

For the foregoing reasons we are of the opinion that the lower court did not err in issuing the writ of mandamus and that its judgment must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.